IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DEBORAH MICHELE BRANHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: _____ |
| ) | |
| GANNETT SATELLITE INFO. ) | |
| NETWORK, INC. d/b/a ) | |
| THE DICKSON HERALD GROUP, ) | JURY DEMAND |
| A PRODUCT OF THE TENNESSEAN ) | |
| ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Deborah Michele Branham, by and through her attorneys, alleges for her Complaint as follows:

### I. INTRODUCTION

1. Plaintiff brings this action against Defendant for legal relief to redress unlawful violations of Plaintiff's rights for retaliation under the Family Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. §§ 2601, *et seq.*

### II. THE PARTIES

#### A. THE PLAINTIFF

2. Plaintiff currently resides in Dickson, Tennessee and is a citizen of the United States.

3. Plaintiff was employed by Defendant as a receptionist approximately from November 21, 2002 to January 15, 2003 and from approximately July 26, 2005 to November 24, 2006.

4. During her time of employment with Defendant, Plaintiff suffered with migraine headaches, depression and insomnia and was diagnosed with sleep apnea, which was certified as a chronic condition by her health care provider.

5. Within the provisions of the FMLA, specifically under 29 U.S.C. § 2611(2)(A), Plaintiff is an "eligible employee."

### B. THE DEFENDANT

6. Defendant is located within the Middle District of Tennessee and is an employer within the provisions of the FMLA, specifically under 29 U.S.C. § 2611(4)(A).

7. The Tennessean is the corporate headquarters of the Dickson Herald.

8. The Tennessean is owned by Gannett Satellite Info. Network, Inc., which is located at 7950 Jones Branch Drive, McLean, Virginia, 22108.

9. At all times material to this action, Defendant has been engaged in commerce as defined by § 2611(1) of the FMLA.

10. Defendant is bound by the rules and regulations of the FMLA.

### III. JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

12. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391(b)-(c).

### IV. FACTS

13. Plaintiff was hired by Defendant on or about November 21, 2002, and worked until January 15, 2003. She was hired a second time on July 26, 2005 and was terminated on November 24, 2006. While working for Defendant, Plaintiff worked as a receptionist/circulation

clerk.

14. In the 12 months preceding her termination, Plaintiff worked in excess of 1,250 hours.

15. On Tuesday, November 7, 2006, Plaintiff contacted her supervisor, Ms. Tracey Buhler, and told her that Plaintiff would not be in because her 12-year old son was sick.

16. On Wednesday, November 8, 2006, Plaintiff contacted Ms. Buhler via e-mail and informed her that her son was still sick and that she would return to work on Thursday, November 9, 2006.

17. On the morning of Thursday, November 9, 2006, Plaintiff left a voicemail for her supervisor stating that she was sick and would not be in.

18. On Friday, November 10, 2006, Plaintiff left another voicemail for her supervisor stating that she was still sick due, in part, to migraine headaches, and would not be in to work.

19. On Monday, November 13, 2006, Plaintiff's husband contacted the Defendant and advised them that he was taking Plaintiff to the doctor.

20. That day, Plaintiff visited the office of Dr. Pamela Singer at a "walk-in clinic," because her primary care physician, Dr. Koster Peters, was not available.

21. After Plaintiff's visit with Dr. Singer at the walk-in clinic, Plaintiff contacted her supervisor, Ms. Buhler, and informed her that she had seen Dr. Singer because her primary care physician was not available.

22. Plaintiff informed Ms. Buhler that Dr. Singer diagnosed her with migraines and rebound headaches.

23. During this conversation, Ms. Buhler informed Plaintiff that she had been approved for short term disability.

24. Plaintiff explained to Ms. Buhler that Dr. Singer had given her a doctor's note to return to work the next day, November 14, 2006.

25. Plaintiff also explained to Ms. Buhler that she was not feeling well and that she had several doctors appointments scheduled.

26. Ms. Buhler told Plaintiff that she did not want the doctor's note from Dr. Singer. Instead, Ms. Buhler informed Plaintiff that she could get short term disability.

27. Ms. Buhler requested that Plaintiff contact her primary care physician to get the short term disability paper work filled out.

28. Ms. Buhler also informed Plaintiff that she needed to come in to the office and complete "close out postal reports" and pick up the short term disability paperwork and fill it out.

29. Plaintiff came into work on November 14, 2006 to work on the reports that needed to be completed.

30. Plaintiff filled out the top portion of the short term disability form, but not the section describing her disability, and gave it to Ms. Buhler.

31. So that Ms. Buhler could discover what Plaintiff's disability consisted of, Plaintiff attached a "post-it" note to the short term disability form, on which she wrote the fax number and name of her primary physician, Dr. Koster Peters.

32. On November 15, 2006, and November 16, 2006, Plaintiff worked from home. Ms. Buhler gave Plaintiff "credit" of 10 hours worked from November 14, 2006 through November 17, 2006.

33. On Wednesday, November 15, 2006, General Manager Buddy Hargett and/or Plaintiff's supervisor, Ms. Buhler, faxed the Plaintiff's short term disability papers to Dr. Singer and/or Dr. Peters.

330140 v1
4
Case 3:08-cv-00700   Document 1   Filed 07/18/08   Page 4 of 10 PageID #: 4

34. On Thursday, November 16, 2006, Ms. Buhler sent Plaintiff an email asking Plaintiff if she had heard anything from her doctor regarding the short term disability papers.

35. Plaintiff informed Ms. Buhler that she had called Dr. Peter's office numerous times but that they had not received anything.

36. Ms. Buhler never informed Plaintiff when the short term disability form needed to be turned in.

37. On Friday, November 17, 2006, Plaintiff worked in the office.

38. On Monday, November 20, 2006, Plaintiff did not report to work.

39. On Tuesday, November 21, 2006, Ms. Buhler informed Plaintiff that she received the Short Term Disability ("STD") fax from Dr. Singer and that it contradicted what Plaintiff had told her. Plaintiff responded by stating to her supervisor that the form would be contradictory because Dr. Singer was merely the "walk-in clinic" doctor who did not know Plaintiff's full medical history, and that Dr. Singer was not her primary care physician.

40. Ms. Buhler told Plaintiff that she "did not have time for this shit," and that she needed to call Kathy Cheatham at Human Resources. Ms. Buhler then hung up on Plaintiff.

41. Plaintiff then called Kathy Cheatham, Vice President of Human Resources at the Tennessean, and informed her that Ms. Buhler sent the STD form to the wrong doctor.

42. Plaintiff then called Dr. Peter's office, who informed Plaintiff that she needed to have the STD paper work to them by the morning of Wednesday, November 22, 2006, because of the Thanksgiving weekend.

43. Plaintiff informed Ms. Buhler that Dr. Peter's office needed the paperwork faxed to them by the morning of November 22, 2006, in order for it to be completed before the Thanksgiving holiday weekend. Ms. Buhler responded by informing the Plaintiff that she would

fax the paperwork before leaving work on the 21st.

44. Plaintiff called Dr. Peter's office on the morning of November 22, 2006, and was told that they had not yet received the STD paperwork.

45. Plaintiff called Dr. Peter's office in the afternoon of the 22nd, and was informed that the fax "just came in." Plaintiff was informed that the office was closing early for the Thanksgiving holiday and was unable to complete the STD form before the weekend.

46. Plaintiff was also informed that the fax was not addressed only to Dr. Peters, after which she called Kathy Cheatham and left a detailed voice message relaying to Ms. Cheatham what had taken place the past week.

47. In late November of 2006, Circulation Manager Alvin Leifeste took the STD forms down to the doctor's office to verify the information.

48. Mr. Leifeste was a curriculum manager at the Dickson Herald and not a representative of a healthcare provider.

49. General Manager Buddy Hargett terminated Plaintiff via a letter dated November 24, 2006. It was not received by the Plaintiff until either November 29, 2006 or November 30, 2006, although Plaintiff was informed of her termination on November 28, 2006, when Ms. Cheatham notified Plaintiff of her termination via telephone.

50. On November 28, 2006, a STD form was completed by Plaintiff's healthcare provider and faxed to the Defendant.

51. Kathy Cheatham told the Plaintiff that the STD form was not going to make any difference in Plaintiff's termination because a nurse practitioner filled it out and because it was "filled out after the fact."

52. The STD form had a return to work date of January 1, 2007.

53. Defendant failed to designate Plaintiff's leave as FMLA leave once they acquired knowledge that the leave was being taken for an FMLA required reason.

54. Defendant failed to provide Plaintiff with specific notice of the date her leave was to commence and a return date.

55. Defendant failed to provide Plaintiff with specific notice of what is required of her under the FMLA.

56. Defendant's STD form also served as the Defendant's Physician Certification for FMLA purposes.

57. Defendant did not allow Plaintiff at least 15 days to get the STD form filled out by her health care provider before terminating her.

58. Defendant's STD form asks for diagnosis under the medical facts section.

59. Defendant failed to have a representative contact Plaintiff's health care provider, with Plaintiff's permission, for purposes of clarification and authenticity of the medical certification.

60. At the time of Plaintiff's termination, the Defendants FLMA policy did not contain information regarding the definition of a healthcare provider.

61. At the time of Plaintiff's termination, Defendant's FMLA policy did not contain the definition of a serious health condition.

62. At the time of Plaintiff's termination, Defendant's FMLA policy did not contain intermittent leave information.

## V. COUNT ONE

63. Plaintiff repeats and incorporates by reference the allegations contained in

Paragraphs 1-62 herein.  By their actions alleged herein, Defendant violated the provisions of Section 2615(a)(1) of the FMLA by interfering with, restraining and/or denying Plaintiff the exercise of or the attempt to exercise her rights under the FMLA.

## VI.  COUNT TWO

64. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-63 herein.  By their actions alleged herein, Defendant violated the provisions of Section 2615(a)(2) of the FMLA by discharging and/or unlawfully discriminating against the Plaintiff for exercising her rights under the FMLA.

## VII.  COUNTS THREE THROUGH SEVEN

65. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-64 herein.  By their actions alleged herein, Defendant violated the provisions of 29 C.F.R. § 825.208(b)(1) by failing to designate the Plaintiff's leave as FMLA once they acquired knowledge that leave was being taken for an FMLA required reason.

66. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-65 herein.  By their actions alleged herein, Defendant violated the provisions of 29 C.F.R. § 825.301(b)(1) by failing to provide a specific notice to Plaintiff of the date her leave was to commence and a return date, and that Plaintiff had at least 15 days to get the STD form filled out by her health care provider before terminating her.

67. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-66 herein.  By their actions alleged herein, Defendant violated the provisions of 29 C.F.R. § 825.307(a) by failing to have a health care provider representing the employer contact the employee's health care provider, with the Plaintiff's permission, for purposes of clarification and authenticity of medical certification.

68. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-67 herein. By their actions alleged herein, Defendant violated the provisions of 29 C.F.R. § 825.220(a)(2) by terminating Plaintiff regardless of the STD form that was completed by Plaintiff's health care provider and presented to Defendant prior to the 15 days Plaintiff was allotted to return the form.

69. Plaintiff repeats and incorporates by reference the allegations contained in Paragraphs 1-68 herein. By their actions alleged herein, Defendant violated the provisions of 29 C.F.R. § 825.118(b)(2) by failing to accept Plaintiff's STD form because it was filled out by a nurse practitioner.

## VIII. PRAYER FOR RELIEF

70. WHEREFORE, the Plaintiff prays for the following relief:

   A. That proper process issue along with a copy of this complaint requiring the Defendant to appear and answer;

   B. That Plaintiff be awarded damages in the amount of any wages, salary, employment benefits or other compensation, including, but not limited to back pay and front pay, plus an equal amount of liquidated damages and/or prejudgment interest;

   C. Any actual monetary loss sustained by the Plaintiff, plus an equal amount of liquidated damages and/or prejudgment interest;

   D. Reasonable attorneys' fees;

   E. The costs and expenses of this action;

   F. Such other legal and equitable relief to which Plaintiff may be entitled; and

G. Plaintiff further demands a Jury to try this cause.

STEWART, ESTES, & DONNELL, PLC

By: */s/Robert C. Bigelow*
   Robert C. Bigelow, #22022
   M. Reid Estes, Jr., #9043
   424 Church Street, Suite 1401
   Nashville, Tennessee 37219
   (615) 244-6538

Attorneys for Plaintiff